[Cite as *Troja v. Pleatman*, 2016-Ohio-5294.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| GRANT TROJA, | : | APPEAL NO. C-150746 |
| | | TRIAL NO. A-1307690 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| CRYSTA PLEATMAN, | : | |
| | | |
| Defendant-Appellant. | : | |

Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 10, 2016

*Santen and Hughes, L.P.A., Charles Reynolds* and *Alison King,* for Plaintiff-Appellee,

*Paul Croushore,* for Defendant-Appellant*,*

*James F. Brockman,* for former Third-Party Defendants Sibcy Cline and Nat Comisar.

**FISCHER, Presiding Judge.**

{¶1} Defendant-appellant Crysta Pleatman appeals the trial court's judgment finding her in indirect criminal contempt for sending emails to opposing counsel, parties, and witnesses in violation of the trial court's no-contact order. Pleatman argues the trial court erred by holding her in indirect criminal contempt without affording her notice and an opportunity to respond in violation of R.C. 2505.03 and her due-process rights under the United States and Ohio Constitutions, and that the trial court's no-contact order violated her First Amendment rights. Finding neither argument meritorious, we affirm the trial court's judgment.

*Facts Giving Rise to the Contempt Proceeding*

{¶2} On January 19, 2015, plaintiff-appellee Grant Troja and former third-party defendants, Sibcy Cline, Inc., and its employee, Nat Comisar, filed a joint motion for sanctions against Pleatman. The motion was based in part on Pleatman's repeated offensive emails to the parties, their counsel, and to the material witnesses in the case. Following a three-day hearing, the trial court determined on May 28, 2015, that the emails were frivolous and granted Troja and Sibcy Cline monetary sanctions against Pleatman and her husband. That same day, the court ordered Pleatman to stop sending harassing emails to these parties, their counsel, and to the witnesses in the case. The trial court addressed Pleatman directly stating, "You don't send e-mails. You have an attorney. Your attorney handles all of that. Stop it. You do it again, sanctions will be that you're going to jail. So no e-mails about this case to anyone involved in your case except to your attorney. Understood?" Pleatman responded, "Understood."

{¶3} On August 28, 2015, Troja and Sibcy Cline filed a joint motion to show cause why Pleatman should not be held in contempt for her failure to comply with the trial court's no-contact order dated May 28, 2015, or in the alternative for monetary

sanctions based on her violation of the court's verbal command. In their motion, they argued that Pleatman had continued, despite the court's earlier admonition, to contact opposing counsel, opposing parties, and witnesses by email. On August 31, 2015, Sibcy Cline and Nat Comisar filed an affidavit from their counsel authenticating multiple emails that had been sent by Crysta and Stephen Pleatman to opposing counsel, opposing parties, and witnesses.

{¶4} On September 7, 2015, Pleatman filed a "memoranda contra to the contempt motion." On November 6, 2015, the trial court entered an order nunc pro tunc to May 28, 2015, which provided, "After hearing testimony and argument from counsel, the Court hereby orders Dr. Stephen Pleatman and Crysta Pleatman to cease contact with anyone involved in the instant case except for their attorney." That same day, the trial court entered an order requiring the Pleatmans to attend a show-cause hearing on November 23, 2015.

{¶5} On November 10, 2015, Troja filed a notice that subpoenas had been personally served on the Pleatmans, informing them of the November 23, 2015 hearing. On November 17, 2015, Pleatman filed an affidavit of disqualification with the Ohio Supreme Court based on her concern that the trial court judge was biased against her and had violated her First Amendment rights by threatening to impose jail time on her for sending emails to opposing counsel and other parties and their counsel. On November 25, 2015, Chief Justice Maureen O'Connor denied the affidavit of disqualification on the basis that the record did not demonstrate any bias or prejudice by the trial court judge and that other remedies remained available to Pleatman, including an appeal from the challenged rulings. *See In re Disqualification of Luebbers*, 145 Ohio St.3d 1226, 2015-Ohio-5671, 48 N.E.3d 568, ¶ 2 and 5.

{¶6} On November 30, 2015, the trial court entered an order requiring the Pleatmans to attend a hearing on December 14, 2015, and it appointed a process server to serve the Pleatmans with notice of that hearing date. The process server filed an affidavit stating that he had personally served the Pleatmans with notice of the December 14, 2015 hearing.

{¶7} On December 14, 2015, the trial court held a hearing on a number of pending motions, including the contempt motion. The Pleatmans appeared at the hearing with both civil and criminal counsel. At the conclusion of the hearing, the trial court found Crysta Pleatman in indirect criminal contempt and sentenced her to five days in the Hamilton County Justice Center.

{¶8} On December 14, 2015, Pleatman's counsel filed a peremptory writ of procedendo with this court. We granted the writ and ordered the trial court to journalize a judgment entry or to release Pleatman from jail. The parties subsequently appeared before the trial court, which journalized an entry sentencing Pleatman to five days in jail. At that time, Pleatman's counsel made an oral motion to stay Pleatman's sentence pending appeal, which the trial court denied. Pleatman then moved this court for a stay of her sentence, which we granted. Pleatman was released from jail on December 16, 2015.

## Notice and Opportunity to Respond

{¶9} In her first assignment of error, Pleatman asserts that "the trial court erred to the prejudice of Ms. Pleatman when it found her in indirect criminal contempt without notice and an opportunity to be heard and violated Crim.R. 32 in every respect."

{¶10} The Ohio Supreme Court has defined "contempt of court" as the disobedience of a court's order. *See Denovcheck v. Bd. of Trumbull Cty. Commrs.*, 36

Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). "It is conduct which brings the administration of justice into disrespect or which tends to embarrass, impede, or obstruct a court in the performance of its functions." *Id.* at 15. The court's power to punish contumacious conduct is both inherent and statutory. *Id.*; R.C. 2705.01 and 2705.02.

{¶11} Contempt proceedings can be civil or criminal and are distinguished by the character of the punishment. *See Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). In civil contempt, the punishment is remedial or coercive and for the benefit of the complainant. Thus, any prison term for civil contempt is conditional to obtain compliance with the court's order. *Id.* In criminal contempt, the punishment typically involves an unconditional prison term or fine designed to vindicate the law and the trial court's authority. *Id.* at 254; *Denovchek* at 16.

{¶12} Contempt is further classified as direct or indirect. A direct contempt is "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." *See* R.C. 2705.01. A trial court may summarily punish a person for direct contempt "because the trial judge is personally aware of the relevant fact." *State v. Kilbane*, 61 Ohio St.2d 201, 204, fn. 4, 400 N.E.2d 386 (1980). Indirect contempt, however, is "conduct which occurs outside the presence of the court, but which also tends to obstruct the due and orderly administration of justice." *See In re Lands*, 146 Ohio St. 589, 595, 67 N.E.2d 433 (1946). "Indirect contempt can involve flouting a court's order or lacking respect for the court outside the court's presence." *Rohr Corp. v. Wendt & Sons*, 1st Dist. Hamilton No. C-961051, 1997 Ohio App. LEXIS 5506, *12 (Dec. 12, 1997); *see* R.C. 2705.02(A) ("[a] person guilty of any of the following acts may be punished as for a contempt: * * * disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer * * *.").

{¶13} In this case, it is undisputed that Pleatman's conduct is properly characterized as indirect criminal contempt. The acts for which Pleatman was cited for contempt occurred entirely outside the court's presence, and the trial court's imposition of an unconditional five-day jail sentence was punishment for criminal contempt.

{¶14} Pleatman argues that the trial court violated R.C. 2705.03 and her due-process rights under the United States and Ohio Constitutions by failing to inform her in writing of the charges against her. R.C. 2705.03 provides that "in cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel." "The function of the written notice is similar to that of a complaint in an action—'to apprise the defendant of the charges against him so that he is able to prepare a defense.'" *See Champaign Cty. Court of Common Pleas v. Fansler*, 2d Dist. Champaign No. 2015-CA-4, 2016-Ohio-228, ¶ 21, quoting *City of Cincinnati v. Cincinnati Dist. Council, 51, Am. Fedn. of State, Cty. & Mun. Emps. AFL-CIO*, 35 Ohio St.2d 197, 203, 299 N.E.2d 686 (1973).

{¶15} Pleatman first contends that the trial court failed to issue a written charge before holding her in contempt. But the trial court did not initiate the contempt proceedings against Pleatman—Troja, Sibcy Cline, and Comisar did. Their joint motion to show cause, which was filed with the clerk of courts, was sufficient to constitute a charge of contempt under R.C. 2705.03 because the motion requested that Pleatman appear and show cause why she should not be held in contempt for her failure to abide by the court's May 28, 2015 no-contact order. *See Bare v. Coss*, 4th Dist. Highland No. 550, 1985 Ohio App. LEXIS 6740, *2 (June 6, 1985).

{¶16} Pleatman, moreover, had direct notice that a violation of the no-contact order could be punished by a jail sentence because the trial court had

verbally warned Pleatman on May 28, 2015, at the conclusion of the sanctions hearing that if she continued to contact the opposing parties and their counsel, the court would send her to jail. Pleatman filed numerous motions prior to the contempt hearing as well as an affidavit of bias and prejudice with the Ohio Supreme Court based on her concerns that the trial court judge had violated her First Amendment rights by threatening to impose jail time on her for sending emails to opposing counsel and other parties and their counsel. Thus, Pleatman's actions belie her argument that she was unaware that the court could impose a jail sentence as a sanction for her violation of the no-contact order. Pleatman, moreover, appeared at the December 14, 2015 contempt hearing with both civil and criminal counsel. As a result, we find her first argument meritless.

{¶17} Pleatman next argues that the trial court failed to give her an opportunity to address the court regarding the contempt matter. But the record reflects that the trial court had previously held a hearing on the original motion for sanctions for frivolous conduct where witnesses had testified regarding Pleatman's emails, and the trial court had issued its verbal warning to Pleatman. Counsel attached to their contempt motion affidavits authenticating Pleatman's emails. Pleatman filed a memorandum opposing the contempt motion. Contrary to Pleatman's assertions, the record reflects that both Pleatman's criminal and civil counsel were given the opportunity to address the court and to present evidence at the hearing on the contempt motion. They simply declined to do so, preferring to rest on the legal arguments in their memorandum. Thus, we cannot conclude that the trial court failed to afford Pleatman the opportunity to be heard on the contempt motion.

{¶18} Finally, Pleatman argues that the trial court violated Crim.R. 32 when imposing her jail sentence, because it failed "to afford her counsel an opportunity to speak on her behalf, to ask if she wished to speak, to afford the prosecuting attorney an opportunity to speak, and to notify her of her appellate rights." Pleatman, however, has set forth no case law to support her position. "A contempt proceeding is a special proceeding and is regarded as sui generis in that it is neither criminal or civil." *See Brown*, 64 Ohio St.2d at 253, 416 N.E.2d 610. While contempt proceedings are characterized as criminal and certain constitutional safeguards attach to the contempt proceedings, the Ohio Supreme Court has not mandated that the trial court comply with Crim.R. 32 in criminal contempt proceedings. As a result, we find Pleatman's final argument meritless. We, therefore, overrule her first assignment of error.

*First Amendment Rights*

{¶19} In her second assignment of error, Pleatman argues that the trial court violated her First Amendment right to free speech when it held her in contempt of court for sending emails to opposing parties and witnesses in the case in violation of the court's oral and written no-contact order.

{¶20} The trial court held Pleatman in contempt not for the content of her email messages, but for her actions in sending them. In finding Pleatman guilty of contempt beyond a reasonable doubt, the trial court stated that Pleatman had sent five emails to seven people and that she had admitted in her own pleadings and the responses to the motions that these emails were frivolous and irrelevant to the material issues in the case. Pleatman does not challenge on appeal the trial court's finding that her emails were frivolous and irrelevant to the litigation, and that they

were sent to the opposing parties, their counsel, and the witnesses in the case in an effort to annoy, harass, and threaten them.

{¶21} A trial court has the inherent power to do all things necessary to the administration of justice and to protect its own powers, process, and the rights of those who invoke its process. *State ex rel. Pfeiffer v. Common Pleas Court*, 13 Ohio St.2d 133, 235 N.E.2d 232 (1968), paragraph one of the syllabus. Indeed, several Ohio appellate courts "have held that these inherent powers include the ability to limit a particular litigant's access to the courts or to prevent further or additional filings in a specific case." *Smith v. Ohio Dept. of Human Servs.*, 115 Ohio App.3d 755, 759, 686 N.E.2d 320 (12th Dist.1996). Thus, the ability to address and prohibit frivolous litigation practices is an essential part of the inherent power of the courts to control and protect the integrity of their own processes. *Id.* at 759.

{¶22} Here, the trial court was within its authority to control the litigation and the conduct of the litigants before it by enforcing the no-contact order. *See State v. Baumgartner*, 6th Dist. Ottawa No. OT-06-046, 2008-Ohio-971, ¶ 98-100. Pleatman, moreover, was represented by counsel throughout this matter, and her counsel remained free to make the arguments deemed necessary to represent her interests and claims in the litigation. As a result, we overrule the second assignment of error. Having found neither of Pleatman's assignments of error meritorious, we affirm the judgment of the trial court.

Judgment affirmed.

**HENDON** and **STAUTBERG, JJ.,** concur.

Please note:

The court has recorded its own entry this date.